**SO ORDERED.**

**DONE and SIGNED December 3, 2018.**



_____
**JOHN S. HODGE
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 18-10836 |
| | § | |
| James Smith, Jr. | § | |
| | § | Chapter 13 |
| Debtor | § | |

### Order Denying Plan Confirmation

Before the Court is the confirmation of Debtor's Chapter 13 Plan (Doc. No. 28) and the objection thereto (Doc. No. 29) filed by the holder of a secured claim. For the following reasons, confirmation of the Plan is **DENIED**.

**I.      Jurisdiction, Core Status and Judicial Power to Enter this Order**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR

83.4.1. All claims presented to this Court are "core" pursuant to 28 U.S.C. § 157 (b)(2)(A), (L) and (O).

The Supreme Court's ruling in *Stern v. Marshall,* 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), sets forth certain limitations on the constitutional authority of bankruptcy courts to enter final orders. *BP RE, L.P. v. RML Waxahachie Dodge, L.L.C.,* 735 F.3d 279, 286 (5th Cir.2013) (" 'the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.' ") (quoting *Stern,* 131 S.Ct. at 2618); Thus, under *Stern*, in addition to determining whether each claim is core or non-core, this Court must also determine whether the underlying issue "stems from the bankruptcy itself or it would necessarily be resolved in the claims allowance process." *BP RE,* 735 F.3d at 286. Absent both statutory and constitutional authority, this Court may not enter a final order, and instead must issue proposed findings of fact and conclusions of law to be considered by the district court.

The Supreme Court has made clear that an order denying confirmation of a proposed Chapter 13 plan is not a final order. *Bullard v. Blue Hills Bank,* —— U.S. ––––, 135 S.Ct. 1686, 1690, 191 L.Ed.2d 621 (2015) ("The question presented is whether such an order denying confirmation is a 'final' order that the debtor can immediately appeal. We hold that it is not."). Moreover, even if this Order could be construed to constitute a final order, the issues presented in this case stem from the bankruptcy itself as a dispute over the confirmation of a plan can only arise in a bankruptcy case. Therefore, there are no *Stern* issues in this case.

## II. Procedural Background

On May 31, 2018 (the "**Petition Date**"), James Smith, Jr. ("**Debtor**") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code (Doc. 1). On June 12, 2018, Debtor filed his Chapter 13 plan (Doc. 9). After objections were raised by the Trustee (Docs. 19, 20), Debtor filed an Amended Plan (Doc. 23). After subsequent objections by both the Trustee (Doc. 27) and JPMorgan Chase Bank, National Association ("**Creditor**") (Doc. 26), Debtor filed a second Amended Plan (Document No. 28). Creditor once again objected (Doc. 29) to confirmation of the Plan because it provided for an interest rate (6.75%) less than the contractual rate (9.25%) on Debtor's principal residence and the proposed interest rate is less than the presumptive rate contemplated by the Supreme Court's holding in *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).

Creditor's claim of approximately $11,000 (Claim No. 6) is secured by a first-priority mortgage on Debtor's principal residence valued at approximately $95,000 as evidenced by Debtor's schedules. (Doc. No. 8). Debtor's loan is scheduled to mature on May 1, 2022, and the final payment under Debtor's sixty (60) month Plan is scheduled for May 1, 2023. (Doc. 32). As a result, it is undisputed that: (1) Creditor is the holder of over-secured claim because the value of the collateral far exceeds the amount of the debt; and (2) Debtor's last payment on the original payment schedule is due to Creditor before the due date of the last payment under the Plan.

Creditor objected to the confirmation of the Plan on two grounds. First,

Creditor argued it is entitled to its contractual interest rate (9.25%) from the Petition Date through the confirmation date pursuant to the provisions of § 506(b) of the Bankruptcy Code. Second, Creditor argued it is entitled to the *Till* interest rate as calculated on the confirmation date rather than the Petition Date. Importantly, Creditor did not challenge Debtor's "prime plus" formula used to calculate the *Till* rate (national prime rate plus 2%). Instead, with respect to the calculation of the *Till* rate, Creditor's sole objection was that Debtor used the wrong date. In this case, the date used for calculating the *Till* rate is significant because the prime rate increased after the Petition Date. Because the prime rate as of the Petition Date and the prime rate as of the confirmation date are different, the Court must determine which of these two dates to use—or whether to use some other date to calculate the cramdown interest rate under *Till*.

### III. Analysis

For the reasons set forth below, this Court holds: (i) pursuant to the provisions of § 506(b) of the Bankruptcy Code, a secured creditor is entitled to the allowance of its contractual rate of interest from the Petition Date until the day before the confirmation date; and (ii) pursuant to the provisions of § 1325(a)(5)(B)(ii) of the Bankruptcy Code, a debtor may modify a secured creditor's rights, including the contractual interest rate, as of the date of the entry of the confirmation order.

1. **Anti-Modifications provisions of § 1322(b) do not apply in this case**.

Ordinarily, a chapter 13 debtor may not modify the contractual interest rate on a home mortgage through a confirmed plan because the Bankruptcy Code provides

that a debtor's plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The Code grants an exception to the above exception when:

> [T]he last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to Section 1325(a)(5).

11. U.S.C. § 1322(c)(2).

In this case, all parties agree that the exception to the exception under § 1322(c)(2) applies which permits Debtor to modify the contractual interest rate on his home mortgage through a confirmed chapter 13 plan pursuant to § 1325(a)(5).

### 2. **Cramdown confirmation standards**

As noted by the Supreme Court, in order to obtain confirmation of a Chapter 13 plan, "the plan must accommodate each allowed secured creditor in one of three ways: (1) by obtaining the creditor's acceptance of the plan [11 U.S.C. § 1325(a)(5)(A)]; (2) by surrendering the property securing the claim [11 U.S.C. § 1325(a)(5)(C)]; or (3) by providing the creditor both a lien securing the claim and a promise of future property distributions (such as deferred cash payments) whose total 'value, as of the effective date of the plan, ... is not less than the allowed amount of the claim." *Till,* 541 U.S. at 468, 124 S.Ct. 1951 (citing and quoting § 1325(a)(5)(B)(ii)). The third avenue—which Debtor has chosen in the case at bar—is "commonly known as the 'cram down option' because it may be enforced over a claim holder's objection." *Id.* at

469, 124 S.Ct. 1951. Typically, under a cramdown, the plan pays the creditor's claim through installment payments, which requires that "over time, the creditor receives disbursements whose total present value equals or exceeds that of the allowed claim." *Id.* (stating that because the claim is paid over time, it must bear interest).

A debtor opting for the cramdown option must satisfy three (3) requirements imposed by § 1325(a)(5)(B). These are that the plan provide: (1) that the holder of a secured claim retain its lien until "payment of the underlying debt . . . or discharge under Section 1328," (2) that payment on the debt be made in "equal monthly amounts," and (3) that the plan may be confirmed with respect to an allowed secured claim if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(i)-(iii)(emphasis added).

In this case, Debtor's Plan satisfies the first two requirements of § 1325(a)(5)(B). The question is whether the Plan satisfies the third requirement mandating that it provide for the present value of the claim on the effective date of the Plan.

### 3. **The *Till* rate should be calculated as of the Confirmation Date**

In *Till,* the Supreme Court mandated a prime-plus formula for interest rates in the case of cramming down a claim. Such an approach begins with the national prime rate and then adjusts that rate, typically upwards, on account of the risk of nonpayment. This modified prime-plus approach is often described as the "*Till* rate."

Determination of the cramdown interest rate is governed by the cramdown

provision in the Bankruptcy Code which reads as follows: "...[T]he court shall confirm a plan if ... with respect to each allowed secured claim provided for by the plan—the plan provides that ... the value, ***as of the effective date of the plan,*** of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim ...." 11 U.S.C. § 1325(a)(5)(B)(ii) (emphasis added).

By its terms, § 1325(a)(5)(B)(ii) focuses on the value of property as of the effective date of the Plan. *In re Texas Grand Prairie Hotel Realty, L.L.C.,* 710 F.3d 324, 333 n.53 (5th Cir. 2013)("The general consensus that has emerged provides that a one to three percent adjustment to the prime rate *as of the effective date* [of the plan] is appropriate.")(emphasis added). The Bankruptcy Code, however, does not define a plan's effective date. Likewise, the Chapter 13 uniform plan used in this District does not include or define the effective date. For purposes of calculating the cramdown interest rate under § 1325(a)(5)(B)(ii), this Court has determined the effective date of the plan means the date on which the plan is confirmed.

In the case at bar, Debtor interprets the phrase "as of the effective date of the plan" as used in § 1325(a)(5)(B)(ii) to mean the petition date. This Court rejects Debtor's interpretation. The Court concludes that a plan must be confirmed before it can have an effective date. The plan is not "effective" until it is confirmed, as § 1327 "Effect of Confirmation" clearly implies. While confirmation and the "effective date of the plan" may not always be the same date (which is commonplace in a Chapter 11 Plan), confirmation must happen first. To choose the petition date as the "effective date" would be to give effect to the plan before it has been confirmed, something the

Bankruptcy Code does not permit.

Interpretation of the Bankruptcy Code "begins where all such inquiries must begin: with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). "[I]t is also where the inquiry should end, for where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Id.* (internal quotation omitted). Section 1325(a)(5)(B)(ii) is no exception. Nothing in the text of that provision purports to make the petition date the effective date of the plan. In contrast, elsewhere in the Bankruptcy Code, Congress demonstrated its ability to identify the date of the petition or the entry of the order for relief as the magic date for other consequences. *See*, for example, 11 U.S.C. §§ 348(d); 1305(a)(2). When interpreting a statute, a court should give meaning to each word in the statute and rely on the plain language of the statute itself. *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)("It is a 'cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence or work shall be superfluous, void, or insignificant.'").

Courts and commentators have generally agreed that for purposes of applying the cramdown provision of § 1325(a)(5)(B)(ii), the phrase "effective date of the plan" means the confirmation date. *Rake v. Wade*, 508 U.S. 464, 469, 113 S. Ct. 2187, 2191, (1993)(*superseded on other grounds by statute*, 11 U.S.C. § 1322(e)) (noting that "§ 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a

claim, including deferred cash payments in satisfaction of the claim … must equal the present dollar value of such claim **_as of the confirmation date_**.")(emphasis added and citations omitted); *In re Turcotte*, 570 B.R. 773, 784 (Bankr. S.D. Tex. 2017) (calculating the cramdown interest rate under § 1325(a)(5)(B)(ii) using the date the confirmation order is entered); *In re Campbell*, 513 B.R. 846, 855 (Bankr. S.D.N.Y. 2014), aff'd, 539 B.R. 66 (S.D.N.Y. 2015) (for purposes of § 1325(a)(5), "as of the effective date, *presumably the confirmation date*, the appropriate interest rate is a rate that will afford the creditor the present value of its secured claim as of that date.") (emphasis added); Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 111.1, at ¶ 6, www.Ch13online.com ("For § 1325(a)(5)(B)(ii) purposes, 'effective date of the plan' is most reasonably understood to mean the date of confirmation.").

Although the instant case deals with the meaning of the phrase "effective date of the plan" as used in the cramdown provision of the Bankruptcy Code, § 1325(a)(5)(B)(ii), other courts have confronted the meaning of that same phrase as used in different provisions of the Code. For example, when applying the "disposable income test" of § 1325(b)(1)(B), the Supreme Court interpreted the meaning of the phrase "as of the effective date of the plan" to mean the date the plan is confirmed and becomes binding. *Hamilton v. Lanning,* 560 U.S. 505, 518, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) ("§ 1325(b)(1)(B) directs courts to determine projected disposable income 'as of the effective date of the plan,' *which is the date on which the plan is confirmed and becomes binding.*") (emphasis added). Despite the Supreme Court's

interpretation of the phrase "effective date of the plan" for purposes of "disposable income test" of § 1325(b)(1)(B) and its mention of the cramdown provision of § 1325(a)(5)(B) in *Rake*, 508 U.S. at 469, lower courts have struggled to interpret the meaning of that same phrase when applying the "best-interests-of-creditors-test" found in § 1325(a)(4) which requires a plan to provide that unsecured creditors will receive as much through the plan as they would if a debtor liquidated under Chapter 7. *In re Goudreau*, 530 B.R. 783, 788 (Bankr. D. Kan. 2015)(collecting cases and concluding that for purposes of the § 1325(a)(4) liquidation analysis, "the Court finds that the better view is that the date the Chapter 13 petition was filed should be considered the "effective date of the plan"."); Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 1601.1, at ¶ 3, www.Ch13online.com (" The phrase 'effective date of the plan' is not defined by the Code. Without directly deciding the question, most best-interests-of-creditors test [§ 1325(a)(4)] cases perform the hypothetical liquidation as of the date of the Chapter 13 petition.").

Notwithstanding the lack of uniformity of interpretation of the phrase "effective date of the plan" for the best-interests-of-creditors-test, this Court holds that for purposes of applying the cramdown provision of § 1325(a)(5)(B)(ii), the phrase "effective date of the plan" means the date the confirmation order is entered.[1]

### 4. **Oversecured creditor is entitled to contract rate of interest from the Petition Date until the "effective date" of the Plan**

Having determined that the *Till* rate should be calculated as of the effective

---

[1] Technically, the effective date is the date the confirmation order becomes final. However, for purposes of implementing § 1325(a)(5)(B)(ii), the effective date is the date the order is entered confirming the plan which, in most cases, is the date of the confirmation hearing.

date of the Plan and that the Plan is not effective until the date it is confirmed, the Court now directs its attention to the determination of the proper interest rate between the Petition Date and the confirmation date. This is often referred to as "pendency interest" because it deals with the accrual of interest during the pre-confirmation pendency of the bankruptcy case.

In this case, there is no question that Creditor is oversecured. Section 506(b) provides that an oversecured creditor is entitled to interest on its claims. It is settled law in the Fifth Circuit that an oversecured creditor is entitled to the allowance of contract interest rates during the pendency of the bankruptcy case from the petition date until the effective date of the plan. *In re Laymon,* 958 F.2d 72, 75 (5th Cir. 1992) ("when an oversecured creditor's claim arises from a contract, the contract provides the rate of post-petition interest."); *Matter of Southland Corp.* 160 F.3d 1054, 1060 (5th Cir. 1998) (affirming use of default contract rate for period "between pre-bankruptcy default and the effective date of the reorganization plan"); *In re T–H New Orleans Ltd.,* 116 F.3d 790, 797 (5th Cir.1997) (the rights granted under § 506 apply "only from the date of filing through the confirmation date."); *In re Turcotte*, 570 B.R. at 787 (concluding that § 506(b) requires the use of the contract rate from the petition date until the date the chapter 13 plan is confirmed); *SJT Ventures, LLC,* 441 B.R. 248, 252 (Bankr. N.D. Tex. 2010) ("the allowance of contract interest rates to apply to so-called 'pendency interest,' which is interest that accrues after filing of petition but prior to reorganization plan's effective date, ***is settled law in the Fifth Circuit***.")(emphasis added).

Although the Fifth Circuit has dealt with pendency interest in the context of Chapter 11 cases, other Circuits have applied §§ 506(b) and 1325 together, and they have concluded those sections mean that contractual interest accrues under § 506(b) only until confirmation of the plan and upon confirmation of the plan, the cramdown interest rate calculated under § 1325(a)(5)(B) applies. *In re Garner*, 663 F.3d 1218, 1221 (11th Cir. 2011) ("our holding in this case is that an oversecured creditor is only entitled to the contract rate of interest from the date of filing until confirmation of the bankruptcy plan in a Chapter 13 case where the debtor invokes the 'cram down' power of 11 U.S.C. § 1325(a)(5)(B)."); *In re Hoopai,* 581 F.3d 1090, 1099–1100 (9th Cir.2009) (pursuant to § 506(b), oversecured creditor is entitled to interest at the contract rate from the petition date through the confirmation date, but new cramdown rate may be applied after confirmation of chapter 13 plan); *In re Milham,* 141 F.3d 420, 423 (2d Cir.1998) ("Section 506(b) ... defines the allowed claim of an oversecured creditor; treatment of that claim *after confirmation* is governed by Section 1325...").

Pursuant to the provisions of § 506(b), an oversecured creditor is entitled to the "benefit of his bargain" from a debtor until a confirmed plan becomes effective. Prior to the effective date of the plan, § 506(b) requires that a debtor pay the contract rate of interest—thus the secured creditor gets the benefit of its bargain, because if the creditor did not receive its prepetition interest rate on an oversecured claim, it would result in a windfall to a debtor holding the equity position. Upon the effective date of the plan, a new bargain is made through the cramdown provision of the

Bankruptcy Code, and § 1325(a)(5)(C)(ii) requires that a creditor simply receive the "present value" of its secured claim for a cramdown confirmation to succeed.

## IV. Conclusion

Pursuant to § 506(b) of the Bankruptcy Code, an oversecured creditor is entitled to the allowance of its contractual interest rate after the filing of the petition but prior to the date of the entry of the confirmation order (the pendency period). In this case, the Plan failed to provide for the payment of the contractual rate of interest on Creditor's claim during the pendency period.

Once a debtor invokes the cramdown power of § 1325(a)(5) of the Bankruptcy Code, a secured creditor's rights, including the contractual interest rate, are subject to modification as of the effective date of the plan. For purposes of § 1325(a)(5)(B)(ii) of the Bankruptcy Code, the effective date of the plan means the date the confirmation order is entered. In this case, *Till* bars Debtor from obtaining confirmation of the Plan because the proposed cramdown rate of 6.75% relied on the prime rate as of the petition date instead of the date the confirmation order is entered. Therefore, Debtor did not satisfy § 1325(a)(5)(B)(ii).

**ACCORDINGLY, IT IS ORDERED** that Debtor's request for confirmation of the chapter 13 Plan is denied without prejudice to Debtor filing an amended plan within 14 days of the entry of this Order that proposes to pay Creditor the contractual rate during the pendency period and the *Till* rate calculated as of the date of the entry of the confirmation order. Assuming the Court confirms a Plan, the effective date of the Plan will be the date of the entry of the confirmation order. Because no one knows

what the prime rate will be on that date, the Plan will need to be further modified to reflect the change in the prime rate if another change occurs by that date.

###